UNITED STATES DISTRICT COURT
SOUTHERN DISTICT OF FLORIDA

**Case No.: 1:14-cv-21484-KMW**

FILED by [signature] D.C.
JUN 24 2014
STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

JONATHAN PADILLA
PLAINTIFF,

-v-

MORRIS, HARDWICK, SCHNEIDER, LLC
DEFENDANT.

_______________________________________/

**PLAINTIFF'S RESPONSE TO DEFENDANT's MOTION TO DISMISS AND MEMORANDUM OF LAW**

Comes now the Plaintiff, JONATHAN PADILLA, who hereby submits his response to Defendant's Motion to Dismiss and states as follows:

## I. STATEMENT OF FACTS

1. On or about February 5th, 2014 Plaintiff received first written correspondence dated January 31st, 2014 from Defendant attempting to collect on an alleged debt. Aforementioned letter stated in part, "We have been instructed to proceed with foreclosure". Aforementioned letter stated in part "**THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED FROM YOU WILL BE USED FOR THAT PURPOSE.**"

2. On or about February 6th, Plaintiff Sent "Debt Validation Request" letter to Defendant certified mail #70131710000011799092 to validate claims sent in aforementioned letter.

3. Defendant received "Debt Validation Request" letter February 10th, 2014.

4. On or about April 22nd, 2014, Plaintiff received notice from a third party advertisement in the mail that a Lis Pendens was filed by Defendant attempting to collect on same alleged debt via foreclosure without validation of alleged debt.

5. On or about April 25th, 2014 Plaintiff filed Verified Complaint against Defendant for violations of the FDCPA 15 U.S.C. § 1692e and FCCPA, Fla. Stat. §559.72

6. On or about May 16th, 2104 Defendant filed Motion to Dismiss For Failure to State a Claim.

## II. STANDARD OF REVIEW

7. Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Id.* At 555. "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* At 570.

8. The complaint must only include "sufficient factual allegations to provide the grounds on which the claim rests". *Friends of Lake View School District v. Beebe*, 578 F.3d 753, 762 (8th Cir. 2009). While "mere labels and conclusions" will not satisfy a plaintiff's burden, there is no need for detailed factual allegation or specific facts that describe the evidence to be presented. *Id.* A plaintiff satisfies their burden if they allege facts sufficient to allow a court to infer "more than the mere possibility of misconduct". *Ashcroft v. Iqbql*, 129 W.Ct. 1937, 1950 (2009).

9. Well-pleaded allegations of fact and every inference fairly deducible therefrom are accepted as true for purposes of a motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 93-94

(2007). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

## III. ARGUMENTS AND AUTHORITIES

10. "When considering Defendant's motion, the court must construe the factual allegations in the complaint in the light most favorable to the plaintiff." *In re Stac Elecs. Sec. Litig.,* 89 F.3d 1399, 1403 (9th Sir. 1996): *Jones v. General Elec. Co.,* 87 F.3d 209, 211 (7th Cir. 1996). "Only if no possible construction of_the alleged facts will entitle plaintiff to relief should the court grant defendant's motion."*Hishon v. King & Spaulding,* 467 U.S. 69, 73, 04 S. Ct. 2229, 2232 (1984). If the factual allegations in plaintiff's complaint support any legal theory that entitles plaintiff to some relief, the court should overrule defendant's motion to dismiss.

### A. THE FDCPA IMPOSES A STRICT LIABILITY STANDARD.

11. The FDCPA, 15 U.S.C. § 1692, et seq., is a strict liability statute, *Taylor v. Perrin, Landry deLaunay & Durand*, 103 F.3d 1232 (5th Cir. 1997): see also *Irwin v. Mascott*, 112 F. Supp. 2d 937 (N.D. Cal. 2000): Pittman v. J.J. *Mac Intyre Co. of Nevada, Inc*., 969 F. Supp. 609 (D. Nev. 1997). "Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages." *Russell v. Equifax A.R.S.,* 74 F. 3d 30, 33-34 (2nd Cir. 1996).

### B. THE FDCPA MUST BE LIBERALLY CONSTRUED IN FAVOR OF CONSUMER DEBTORS.

12. The FDCPA is a remedial statute. *Hamilton v. United Healthcare of Louisiana, Inc.,* 310 F. 3d 385, 392 (5th Cir. 2002). The remedial nature of the FDCPA requires that courts interpret it liberally. *Clark v. Capital Credit & Collection Services, Inc.,* 460 F. 3d 1162,

1176 (9th Cir. 2006). "Because the FDCPA, like the Truth in Lending Act (TILA) 15 U.S.C. § 1601 *et seq*., is a remedial statute, it should be construed liberally in favor of the consumer." Johnson v. Riddle, 305 F. 3d 1107, 1117 (20th Cir. 2002).

**C. THE FDCPA BROADLEY PROHIBITS UNFAIR OR UNSCONSIONABLE COLLECTION METHODS, CONDUCT WHICH HARASSES, OPRESSES OR ABUSES ANY DEBTOR, AND ANY FALSE, DECEPTIVE OR MISLEADING STATEMENTS, IN CONNECTION WITH THE COLLECTION OF A DEBT.**

13. The Fair Debt Collection Practices Act. ("FDCPA") is a comprehensive statute, which prohibits a catalog of activities in connection with the collection of debt by third parties. See 15 U.S.C. § 1692 et seq. The FDCPA imposes civil liability on any person or entity that violates its provisions, and establishes general standards of debt collector conduct, defines abuse, and provided for specific consumer rights. 15 U.S.C. § 1692k. The operative provisions of the FDCPA declare certain rights to be provided to or claimed by debtors, forbid deceitful and misleading practices, both generally and in a specific list of disapproved practices, and prohibit harassing and abusive tactics both generally and in a specific list of disapproved practices.

14. In enacting the FDCPA, the United States Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). Congress additionally found existing laws and procedures for redressing debt collection injuries to be inadequate to protect consumers. 15 U.S.C. § 1692(b). It is the express purpose of the FDCPA to "eliminate abusive debt collection practices by debt collectors, to insure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt

collection abuses." 15 U.S.C. § 1692(e).

## III. ARGUMENTS AND AUTHORITIES

15. The FDCPA broadly enumerates several practices considered contrary to its stated purpose, and forbids debt collectors from taking such action. The substantive heart of the FDCPA lies in three broad prohibitions. First, a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. 15 U.S.C. § 1692d. Second, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e specifically "(4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action. And third, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The FDCPA broadly prohibits any false deceptive or misleading statements, in connection with the collection of a debt such as "(5) The threat to take any action that cannot legally be taken or that is not intended to be taken" ... *Baker v. G.C. Services Corp.*, 677 F.2d 775 (9th Cir. 1982); *Heintz v. Jenkins*, 514 U.S. 291 (1995); *McCartney v. First City Bank*, 970 F.2d 45 (5th Cir. 1992).

16. Validation requires presentment of the account and general ledger statement signed and dated by the party responsible for maintaining the account. See *Pacific Concrete F.C.U. v. Kauanoe,* 62 Haw. 334, 614 P. 936 (1980), GE Capital Hawaii, Inc. v. Yonenaka 25 P. 3d 807, 96, Hawaii 32, (Hawaii App 2001), *Fooks v. Norwich Housing Authority* 28 Conn. L. Rptr. 371, (Conn. Super. 2000), *Town of Brookfield v. Candlewood Shores Estates, Inc*. 513

A. 2d 1218, 201 Conn. I (1986), and *Solon V. Godbole*, 163 III. App. 3d 845, 114 I11. Dec. 890, 516 N.E. 2d 1045 (3Dist. 1987). The Defendant never complied with Plaintiff's demands for validation of the alleged debt they were attempting to collect yet continued their collection activities. **A debt collector verifies a debt by providing information that is responsive to the consumer's request**. *See* H.R. Rep. No 31, 95th Cong., 1st Sess. 5 1977. At no time did Defendant begin to attempt to properly validate the alleged debt as demanded by Plaintiff.

17. Defendants' argument that they did not violate 15 U.S.C. § 1692e or (FCCPA), Fla. Stat. §559.72(9) is erroneous and without merit. Defendant filed suit against the Plaintiff without providing validation after Plaintiff made a demand to Defendant and no validation of the alleged debt was provided. The fact that Defendant made a faulty presumption and violated 15 U.S.C. § 1692 does not excuse them from liability under a bona fide error defense, as stated in Jerman v. Carlise, NcNellie, Rini, Dramer & Ulrich, L.P.A. 538 F.3d 469,471 (6th Cir. 2008).

18. Defendant claims in their Motion that they are enforcing a security interest for their Client THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWMBS INC.,CHL MORTGAGE PASS-THROUGH TRUST 2007-HYB1, MORTGAGE PASS THOUGH CERTIFICATES.SERIES 2007-HYBI who allegedly holds the Mortgage and the Note. Defendant claims the Security interest was "assigned" to their client. Contrary to their claim, the assignment provided shows that the Mortgage and Note were assigned from the original holder (Flick) with MERS as Nominee on July 11, 2011, which was after Flick ceased to exist on 01/15/2010 according to public records. See Exhibit A. Even if none of this was true,

the assignment attached to the complaint included in exhibits is from Mortgage Electronic Registration Systems, Inc. (hereinafter "MERS") to supposed Note Holder, and that assignment is completely ineffective. As nominee for the lender, MERS serves in a very limited capacity. Specifically, MERS records the mortgage and tracks ownership of the lien. MERS has no substantive rights itself and, therefore, cannot assign what it does not have. "A nominee of the owner of the note and mortgage may not effectively assign the note and mortgage to another for want of an ownership interest in said note and mortgage by the nominee." LaSalle Bank Nat. Ass'n v. Lamy, 824 N.Y.S.2d 769, 2006 WL 2251721 (Sup.2006). When a state agency found that MERS is a mortgage banker subject to license and registration requirements, MERS appealed to the Supreme Court of Nebraska and outlined its very limited role as nominee. "Subsequently, counsel for MERS explained that MERS does not take applications, underwrite loans, make decisions on whether to extend credit, collect mortgage payments, hold escrows for taxes and insurance, or provide any loan servicing functions whatsoever. MERS merely tracks the ownership of the lien and is paid for its services through membership fees charged to its members." Mortgage Electronic Registration Systems, Inc. v. Nebraska Department of Banking and Finance, 704 N. W.2d 784 (Neb.2005). "MERS argues that it does not acquire mortgage loans and... only holds legal title to members' mortgages in a nominee capacity and is contractually prohibited from exercising any rights with respect to the mortgages (i.e., foreclosure) without the authorization of the members. Further, MERS argues that it does not own the promissory notes secured by the mortgages and has no right to payments made on the notes." Id. Emphasis added. "Documents offered during the Department hearing support the limited nature of MERS' services." [d. Based on the explanation from MERS itself and documents

presented by MERS and reviewed by the Supreme Court of Nebraska, it is undisputed that MERS serves in a very limited capacity and holds no substantive rights. MERS is contractually prohibited from exercising any rights in a foreclosure case without the authorization of the lender, and that prohibition was confirmed by MERS itself. There is no evidence of any such authorization in the instant case. Other courts around the country have likewise recognized the limited role that MERS plays as nominee. "We specifically reject the notion that MERS may act on its own, independent of the direction of the specific lender who holds the repayment interest in the security instrument at the time MERS purports to act. ..Nothing in the record shows that MERS had authority to act." Mortgage Electronic Registration Systems. Inc. v. Southwest Homes of Arkansas, 2009 WL 723182 (Supreme Court of Arkansas, 2009). "MERS's role in this transaction casts no light on the contractual issues raised in this case." Id. "The relationship that MERS has to Sovereign is more akin to that of a straw man than to a party possessing all the rights given a buyer." Landmark National Bank v. Kesler, 216 P.3d 158 (Supreme Court of Kansas, 2009). "MERS presents no evidence as to who owns the note, or of any authorization to act on behalf of the present owner." In Re Vargas, 396 B.R. 511 (Bankr.C.D.Cal. 2008). "As noted above, MERS purportedly assigned both the deed of trust and the promissory note to Consumer...however, there is no evidence of record that establishes that MERS either held the promissory note or was given the authority by New Century to assign the note...Accordingly, the Court concludes that there is insufficient evidence that Consumer has standing to proceed with this litigation." Saxon Mortgage Services, Inc. v. Hillery, 2008 WL 5170180 (N.D.Cal. 2008).

19. Defendant also claims in their Motion to Dismiss that they did in fact send Plaintiff validation of alleged debt, which never occurred as evidenced by their own Exhibits.

Defendant claims that another third party named Bayview Loan Servicing was "at all times relevant hereto the servicing agent of the subject note and mortgage for the foreclosure Plaintiff" and validated the same alleged debt previously for Defendant, which is absurd. Bayview Loan Servicing was never the servicing agent for anything ever related to Plaintiff but attempted to collect on same alleged debt and ended settling out the case without ever validating said alleged debt. See Case# 1:13-cv-24291-WJZ. At no point in time do either of the Defendants prove that there exists a valid debt, contract or agreement between Defendants and Plaintiff. Furthermore, none of the Exhibits provided by Defendant prove any contract or agreement exists between Plaintiff and Defendant. At no point in time does the Defendant provide any detailed accounting statements of any alleged debt. Defendant is claiming just as Bayview did, that they have a right to collect on an alleged debt that does not even exist, which Plaintiff intends to fully prove.

20. Defendant cites *Hawkins-El v. First Am. Funding, LLC (See page 5 of 10 paragraph 2)* stating "that the debt collector did not violate the FDCPA by continuing its efforts to collect debt stemming from a revolving line of credit after the debt had been verified...". This citation is knowingly taken out of context for the purpose of misleading the Court to an unjust decision. Plaintiff is not sure why that case would be cited as in this particular case at hand the alleged debt was never verified. In addition, the Defendant in cited case was not a "Debt Collector", but rather an actual creditor with a verified business relationship to the Plaintiff as shown by Plaintiff. On the other hand, the Defendant in this case at hand is indeed a "Debt Collector" as stated in Defendants own Motion and dunning letter as well as defined by FDCPA, 15 U.S.C. §1692a(6) and the FCCPA, Fla. Stat. §559.55(6).

21. Defendant goes on to cite *Warren v. Countrywide Home Loans, Inc.*, which again, is knowingly taken out of context for the purpose of misleading the Court to an unjust decision.

The Defendant in cited case again is not deemed a "Debt Collector", rather a creditor simply enforcing their security interest. The case at hand is with a third party debt collector seeking to illegally foreclose on Plaintiffs homestead property without validation of any agreement or contract between Plaintiff and Defendant. Defendant or Defendants' "client" have no security interest in Plaintiffs property and has never had any type of established relationship with Plaintiff as shown by Defendants own Exhibits submitted. Even if Defendant claims they are only enforcing a security interest, which they have shown is not true, *Reese v. Ellis, Painter, Ratterree & Adams, LLP* , 678 F.3d 1211 (11th Cir. 2012) held that an entity that regularly attempts to collect debts can be a "debt collector" under the FDCPA even when that entity is also enforcing a security interest. In summarizing its ruling on this point, the Court said: "A communication related to debt collection does not become unrelated to debt collection simply because it also relates to the enforcement of a security interest." The Reese holding was recently reaffirmed in *Birster v. Am. Home Mortg. Servicing*, 2012 U.S. App. LEXIS 14660 (11th Cir. Fla. July 18, 2012).

22. Defendant cites *Clark v. Capital Credit & Collection Serv. 460 F.3d 1162, 1177 (9th Cir. 2006)* again knowingly taken out of context for the purpose of misleading the Court to an unjust decision stating, "if a debt collector reasonably relies upon the debt reported by the creditor, the debt collector will not be liable for any errors." The case cited shows that Plaintiff was indeed provided with detailed itemized statements required by FDCPA by Defendant regarding the alleged debt, which was never completed in this particular case as evidenced by all exhibits provided by Defendant. At no point in time does Defendant provide detailed itemized statements required by FDCPA.

23. As previously mentioned, the FDCPA is a strict liability statute and "Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages". The argument of no duty to send a verification letter fails in light of

the fact that Defendant did NOT provide validation of the alleged debt nor did the Defendant up until the time this response was filed.

24. The arguments made that Plaintiff has not provided all evidence material to the allegations made in the complaint is ridiculous. Such evidence is to be presented at trial and is not required to be annexed to the Original Complaint. Plaintiff again states "Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," [emphasis added] in order to "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." [emphasis added] *Id.* At 555. "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." [emphasis added] *Id.* At 570.

25. The arguments made by the Defendants in regard to the FCCPA are frivolous. Plaintiff has made detailed allegations of (FCCPA), Fla. Stat. §559.72(9) by claiming, attempting or threatening to enforce a debt when such persons knew that the debt was not legitimate. The Defendant has used written representations of exaggeration and falsehood, which is precisely what is required for an action to be brought under FCCPA 559.72 . This includes the fact that Defendants own letter states clearly states

**"THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED FROM YOU WILL BE USED FOR THAT PURPOSE."**,

as well as "We have been instructed to proceed with foreclosure". Defendant has filed a foreclosure action on Plaintiff when they have no legal standing and Plaintiff will prove this to be the case through discovery.

26. The intent of the Defendants actions was that the Plaintiff would rely on their false and coercive statements and just "pay up" rather than exercise his rights as dictated by the FDCPA and not bring suit against the Defendants for their violation of the FDCPA and FCCPA law as well.

27. The coercive nature of the actions of, and statements made to the Plaintiff in written communication from Defendant leave little doubt that Plaintiff has been damaged with his having lost sleep and was and is currently being subjected to any manner of emotional trauma including, but not limited to, depression, anger, fatigue, anxiety, and emotional distress.

**IV. CONCLUSION**

It is difficult to comprehend the basis for Defendant's motion, which appears to have been filed in bad faith. The Complaint specifies that Defendant illegally attempted to collect on a nonexistent debt. The Court should not tolerate a frivolous motion such as this by a party who does not wish to have its illegal activities exposed. Plaintiff has pleaded facts sufficient to allow a court, drawing on "judicial experience and common sense", to infer "more than the mere possibility of misconduct", which easily satisfies his burden of pleading under the FCCPA, in addition to the FDCPA at this stage. See Ashcroft v. Iqbal, 129 S.Ct. at 1950. Plaintiff's claims should therefore survive dismissal. Plaintiff respectfully requests that the Court take notice of the well-pleaded allegations of the *pro se* Plaintiff's complaint, and which, in light of the Plaintiff's *pro se* status, the Court must hold to a less stringent standard than formal pleadings drafted by an

attorney and construe liberally. See Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed. 2d 652 (1972).

**WHEREFORE**, Plaintiff respectfully prays that this Court enter an order denying Defendant's Motion to Dismiss for Failure to State a Claim. In the alternative, if the Court determines Plaintiff has failed to state a claim, Plaintiff asks the Court to grant leave to amend his Complaint.

Dated: June 24, 2014
Respectfully submitted,

JONATHAN PADILLA,
811 Ne 199th St. #105
Miami, Fl 33179
305-766-9906

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been delivered this 24 day of June, 2014 by mail delivery to:

*Copies furnished to*:
**David Djebelli**
Law Office of Elizabeth R. Wellborn, P.A.
350 Jim Moran Blvd, Suite 100
Deerfield Beach, FL 33442
305-318-0626
Email: daviddj26@gmail.com

Jonathan Padilla
811 Ne 199th St. #105
Miami, Fl 33179
305-766-9906

Exhibit A
page 1

Florida Department of State
Division of Corporations

# Detail by Entity Name

**Florida Profit Corporation**

FLICK MORTGAGE INVESTORS, INC.

**Filing Information**

| | |
|---|---|
| **Document Number** | K70965 |
| **FEI/EIN Number** | 592936881 |
| **Date Filed** | 03/02/1989 |
| **State** | FL |
| **Status** | INACTIVE |
| **Last Event** | VOLUNTARY DISSOLUTION |
| **Event Date Filed** | 01/15/2010 |
| **Event Effective Date** | NONE |

**Principal Address**

145 ANCHOR DRIVE
VERO BEACH, FL 32963

Changed: 04/17/2009

**Mailing Address**

145 ANCHOR DRIVE
VERO BEACH, FL 32963

Changed: 04/17/2009

**Registered Agent Name & Address**

FLICK, JEFFREY BPRES
145 ANCHOR DRIVE
VERO BEACH, FL 32963

Name Changed: 04/17/2009

Address Changed: 04/17/2009

**Officer/Director Detail**

**Name & Address**

Title PD

FLICK, JEFFREY BPRES
145 ANCHOR DRIVE
VERO BEACH, FL 32963

Exhibit A
page 2

## Annual Reports

| Report Year | Filed Date |
|---|---|
| 2007 | 04/20/2007 |
| 2008 | 01/22/2008 |
| 2009 | 04/17/2009 |

## Document Images

| | |
|---|---|
| 01/15/2010 -- Voluntary Dissolution | View image in PDF format |
| 04/17/2009 -- ANNUAL REPORT | View image in PDF format |
| 01/22/2008 -- ANNUAL REPORT | View image in PDF format |
| 04/20/2007 -- ANNUAL REPORT | View image in PDF format |
| 04/12/2006 -- ANNUAL REPORT | View image in PDF format |
| 01/06/2005 -- ANNUAL REPORT | View image in PDF format |
| 01/08/2004 -- ANNUAL REPORT | View image in PDF format |
| 01/23/2003 -- ANNUAL REPORT | View image in PDF format |
| 05/06/2002 -- ANNUAL REPORT | View image in PDF format |
| 03/26/2001 -- ANNUAL REPORT | View image in PDF format |
| 03/28/2000 -- ANNUAL REPORT | View image in PDF format |
| 02/08/1999 -- ANNUAL REPORT | View image in PDF format |
| 05/27/1998 -- Amendment | View image in PDF format |
| 04/03/1998 -- ANNUAL REPORT | View image in PDF format |
| 04/16/1997 -- ANNUAL REPORT | View image in PDF format |
| 04/16/1996 -- ANNUAL REPORT | View image in PDF format |
| 04/10/1995 -- ANNUAL REPORT | View image in PDF format |